William LEACH, Plaintiff,

v.

Charles DUFRAIN, Superintendent of Franklin Correctional Facility; Alfred Accornero, Deputy Superintendent of Administration; Michael Parrott, Deputy Superintendent of Security; Terry Cayea, Lieutenant/Tier Hearing Officer; Jerry Otis, Tier Hearing Officer; K. Castine, Correction Officer; G. Lafebver, Correction Officer; and Randy McAdam, Correction Officer, Defendants.

No. 97–CV–1679 (LEK/GJD).

United States District Court, N.D. New York.

March 28, 2000.

---

William Leach, New York City, plaintiff pro se.

Hon. Eliot L. Spitzer, New York State Attorney General, Albany, NY, Mary E. Hill, Asst. Atty. General, of counsel, for defendants.

## MEMORANDUM–DECISION AND ORDER

KAHN, District Judge.

### I. Background

Plaintiff Mr William Leach brings this prisoner civil rights action, alleging that Defendants deprived him of his rights in violation of 42 U.S.C. § 1983. Plaintiff alleges that Defendants acted in unlawful disregard of his health, subjected him to repeated harassment and verbal abuse, retaliated against him for filing grievances, violated his medical confidentiality and thus subjected him to adverse treatment from his fellow inmates, discriminated against him on the basis of race and gender, subjected him to unreasonable search and seizure, impeded his access to the prison law library, and thus violated his rights under the First, Sixth, Eighth and Fourteenth Amendments to the Constitution. Plaintiff seeks an injunction against retaliation and harassment, compensatory damages of $500,000 "for each of the unlawful disclosures," punitive damages of $500,000 "for each of the unlawful disclosures," reasonable attorney fees and costs, and such other and further relief as the Court deems reasonable and just.

### II. Motion

Now before the Court is Defendants' motion for summary judgment dismissing the complaint pursuant to Fed.R.Civ.P. 56(b). (See Notice Mot. (Doc. 26, 2 Aug. 1999).) Plaintiff has filed no response within the time limits fixed by L.R. 7.1(b)1.[1] The allegations of Defendants' motion for summary judgment stand before this Court without dispute and disclose that Defendants are entitled to judgment as a matter of law.

### A. Summary Judgment Standard for Unopposed Motion

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). The court's function is not to resolve disputed issues of fact, but only to determine whether there is a genuine issue to be tried. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); Eastman Mach. Co. v. United States, 841 F.2d 469, 473 (2d Cir.1988). In making this determination, the court is required to view the evidence in the light most favorable to the nonmoving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); Adickes v. S.H. Kress & Co., 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Furthermore, the party seeking summary judgment has the burden of showing that no genuine factual dispute exists. See Cronin v. Aetna Life Ins. Co., 46 F.3d 196, 202 (2d Cir.1995).

Once the movant has come forward with appropriate support demonstrating that there is no genuine issue of material fact to be tried, the burden shifts to the nonmoving party to present similar support setting forth specific facts about which a genuine triable issue remains. See Anderson, 477 U.S. at 250, 106 S.Ct. 2505. Mere conclusory allegations will not suffice. Instead, the nonmoving party must present "significant probative supporting evidence" that a factual dispute exists.

---

1. Defendants filed this motion 2 August 1999. The response deadline for Plaintiff was 30 Aug. 1999, and Defendants' reply to the response would have been due 6 September 1999.

Fed.R.Civ.P. 56(e); *Anderson,* 477 U.S. at 249, 106 S.Ct. 2505.

In addition, the Court must inquire as to whether there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for the party. *See Anderson,* 477 U.S. at 249, 106 S.Ct. 2505. Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Further, the court should grant summary judgment where the nonmoving party's evidence is "merely colorable[,] conclusory, speculative or not significantly probative." *Parker v. Chrysler Corp.,* 929 F.Supp. 162, 165 (S.D.N.Y.1996) (citing *Knight v. United States Fire Ins.,* 804 F.2d 9, 12–15 (2d Cir.1986) (Feinberg, C.J.)).

▮▮▮ A pro se plaintiff opposing summary judgment may not rely solely on his complaint to defeat the motion. *See Champion v. Artuz,* 76 F.3d 483, 485–86 (2d Cir.1996) (per curiam). Thus, if a party does not respond properly, summary judgment will be entered against him, if appropriate. *See* Fed.R.Civ.P. 56(e); *Graham v. Lewinski,* 848 F.2d 342, 344 (2d Cir.1988). A summary judgment motion in a pro se case may be granted as unopposed if: (1) the plaintiff has received adequate notice that failure to file any opposition may result in dismissal of the case; and (2) the Court is satisfied that "the facts as to which there is no genuine dispute show that the moving party is entitled to judgment as a matter of law." *Champion,* 76 F.3d at 486 (internal quotation marks omitted).

The Court addresses the motion in light of these standards.

### III. *Discussion*

The Court's complete review of the docket report and the submissions on file in the Clerk's Office indicates that Plaintiff indeed did not oppose Defendants' motion, and did not notify the Court and the Defendants that it would not do so. Failure to provide such notification is in contravention of the Local Rules.

> *Any party who does not intend to oppose a motion* ... shall promptly notify the court and the other parties of such intention. Notice should be provided at the earliest practicable date, but in any event no less than **SEVEN CALENDAR DAYS** prior to the scheduled return date of the motion, unless for good cause shown. **Failure to comply with this Rule may result in the imposition of sanctions by the court.**

L.R. 7.1(b)3. The substantive consequences of failing to oppose a motion, too, are clear. "If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party." Fed.R.Civ.P. 56(e).

Nonetheless, even where a summary judgment motion is unopposed and thus there clearly is no genuine issue of material fact, judgment should not be granted in circumstances contrary to law. For that reason the Court has carefully reviewed Defendants' submissions, including the Notice of Motion, the L.R. 7.1(a)3 statement, Defendant Accornero's affidavit, the Memorandum of Law, and the exhibits. In accordance with the standards enunciated in *Champion,* 76 F.3d at 486, the Court has determined that Plaintiff received adequate notice that his failure to file any opposition may result in dismissal of the case. (*See* Notice Mot. at 2.) In addition, the Court has determined that the facts as to which there is no genuine dispute show that the moving parties are entitled to judgment as a matter of law. The Court deems admitted as uncontroverted all material facts (save one (*see infra* p. 548, pt. III.D)) set forth in Defendants' L.R. 7.1(a)3 statement, because Plaintiff has not filed his own L.R. 7.1(a)3 statement as required. *See* L.R. 7.1(a)3. Plaintiff's prin-

cipal claims, Defendants' arguments regarding them, and the Court's judgments on those claims, are as follows.

### A. *Excessive Reduction in Cell Temperatures*

■ Plaintiff asserts that Defendant LaFebver kept the ventilation system operating in a mode that drastically reduced the temperature in his cell. (*See* Inmate Civil Rights Compl. Pursuant to 42 U.S.C.1983 ("Compl.") at 4 ¶ (5)(f) (Doc. 1, 14 Nov. 1997).) In retaliation for his reporting Defendant LaFebver's action, Plaintiff claims, he received a spurious citation for misconduct. (*See id.*) In the Northern District, claims of Eighth Amendment violations are reviewed under well-established criteria.

A claim alleging that prison conditions are in violation of the Eighth Amendment must satisfy both an objective and subjective requirement: the conditions complained of must be "sufficiently serious" from an objective standpoint, and the plaintiff must demonstrate that prison officials subjectively acted with "deliberate indifference." *Wilson v. Seiter,* 501 U.S. 294, 298 & 297, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991). The required inquiry with regard to deliberate indifference is whether "the official knows of and disregards an excessive risk to inmate [health or] safety; the official must both be aware of facts from which the inference could be drawn [that a substantial risk of serious harm exists,] and [he] must also draw th[e] inference." *Farmer v. Brennan,* 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994).

*Davidson v. Coughlin,* 920 F.Supp. 305, 308 (N.D.N.Y.1996) (McAvoy, C.J.).[2] Apart from Plaintiffs bare allegations, there is not in the record sufficient evidence to support a jury verdict in favor of Plaintiff on this claim. Most notably, Plaintiff has not supplied the date of the incident, any record of the outside temperature at that date, any corroborating statement by another prisoner then housed in the same unit or location, any record of treatment for the severe cold he says he caught because of the reduction in temperature, or the record of the report he says he made and the ensuing investigation.[3]

■ Regarding Plaintiff's claim of retaliation, the filing of false accusations, when done in retaliation for protected conduct, is actionable under 42 U.S.C. § 1983. *See Taylor v. Sullivan,* 980 F.Supp. 697, 704 (S.D.N.Y.1997) (citing *Franco v. Kelly,* 854 F.2d 584, 585 (2d Cir.1988)). A plaintiff need not adduce *direct* evidence to support an accusation of retaliation. Closeness in time between the conduct and the alleged retaliation, and a reasonable opportunity for a defendant to learn of the protected conduct that he purportedly targeted for retaliation, are sufficient to allow a reasonable trier-of-fact to infer that an officer learned of an inmate's reporting of the officer's action and retaliated against the inmate for it. *See Colon v. Coughlin,* 58 F.3d 865, 872 (2d Cir.1995) (holding that "temporal proximity" between an inmate's protected conduct and the adverse action may serve as "circumstantial evidence of retaliation").

In this case, however, the Court does not have before it the date of the alleged

---

**2.** Alterations in the text of the quotation of *Farmer* are corrections to conform with the original text of the Supreme Court decision, as found at 511 U.S. 825, 114 S.Ct. 1970, 1979, 128 L.Ed.2d 811.

**3.** Contrary to the assertion by counsel for Defendants, however, Plaintiff did *not* "claim that his cell was kept at sub-freezing temperatures." (Mem.Law in Supp. Def.'s [*sic*] Mot. for Summ.J. ("Mem.") at 10–11 (Doc. 30, 2 Aug. 1999).) He instead stated in his com-

plaint that Defendant kept the dorm blowers on "in *sub-freezing out door* temperature, which lowered the *indoor* temperature *well below normal* recommended temperature." (Compl. at 4 ¶(5)(f) (emphases added).) Counsel have an obligation not to misrepresent evidence before the Court; even inadvertent misrepresentation has a seriously detrimental effect on the fair advocacy, and just and efficient adjudication, of litigation.

incident, the date of Plaintiff's report of it, the outcome of the subsequent investigation, the date of the ticket Plaintiff now complains of, nor any information about the conduct for which the ticket was purportedly issued. Therefore, there are not sufficient facts before the Court to allow a jury to find that Defendants retaliated against Plaintiff.

### B. *Citation for Braiding Hair*

█ Plaintiff claims that Defendant Castine acted on the basis of bias in issuing him a citation for braiding his hair, and thus discriminated against him on the basis of gender. (*See* Compl. at 4 ¶ (5)(f).) The claim of gender discrimination is conclusory, and Plaintiff has, subsequent to his complaint, provided no evidence suggesting to the Court why a prohibition by the facility of his braiding his hair should be interpreted as gender discrimination. In addition, the Court credits Defendants' arguments that such regulation of inmate hair length and hair styles is reasonably related to important facility concerns over safety and security. (*See* Mem.Law in Supp. Def.'s [*sic*] Mot. for Summ.J. ("Mem.") at 12–13 (Doc. 30, 2 Aug. 1999) (citing *Hines v. South Carolina Dept. of Corrections*, 148 F.3d 353, 356 (4th Cir. 1998)).) Therefore, there are not sufficient facts before the Court to allow a jury to find that when Defendant Castine cited Plaintiff for braiding his hair that he thereby engaged in gender discrimination.

### C. *Food–Related Restrictions*

█ Plaintiff claims that his food was not served properly heated, and that he was not allowed to heat his food on his own. (*See* Compl. at 4 ¶ (5)(f).) Defendants have submitted as uncontroverted fact that the denial of certain privileges related to diet were sanctions for misconduct when Plaintiff failed to comply with requirements that he had specifically contracted to observe. (*See* Defs.' Statement of Material Facts Pursuant to Local Rule 7.1(a)(3) ("7.1(a)(3) Statement") at 2–3 ¶ 11 (Doc. 28, 2 Aug. 1999).) Furthermore, the preparation of all food offered to all inmates, including Plaintiff, was compliant with applicable health standards. (*See id.* at 3 ¶ "7" [12].)[4] While the Court can envision circumstances under which an inmate's health or dietary requirements might make a prison's failure to heat food or to provide for its heating by the inmate a cruel or unusual punishment, Plaintiff has advanced only conclusory allegations and a non-specific reference to "regulated temperatures" set forth in a "NYS Health Policy manual." (*See* Compl. at 4 ¶ (5)(f).) Defendants have argued cogently that our Circuit's standard of review for allegations of Eighth Amendment violations requires Plaintiff to show that the food served to inmates is nutritionally inadequate, and that it is served under conditions that present an immediate danger to the health and well-being of those inmates. (*See* Mem. at 8 (quoting *Robles v. Coughlin*, 725 F.2d 12, 15 (2d Cir.1983) (per curiam)).) Defendants have submitted facts indicating that those conditions did not prevail at the place and times Plaintiff complains of. For the foregoing reasons, there are not

---

4. The sequentially-numbered paragraphs of Defendants' 7.1(a)3 Statement reach number 11 at the end of page 2. On page 3, for reasons that defy explanation, the numbering regresses and starts with number 7. Thus, the paragraphs that should be numbered 12 through 21 are instead numbered 7 through 16. This renders Defendants' statement non-compliant with L.R. 7.1(a)3; had Plaintiff responded to Defendants' summary judgment motion, it would have made Plaintiff's compliance with L.R. 7.1(a)3's requirement, that "[t]he non-movant's response shall mirror the movant's Statement of Material Facts by admitting and/or denying each of the movant's assertions in *matching* numbered paragraphs" (emphasis added), substantially more difficult. Due care by the attorney preparing and responsible for such papers should include proofreading, which would catch most errors of this sort.

In citing paragraphs on pages 3 and 4 of Defendants' Statement, the Court will give the paragraph number in the Statement in quotation marks, and then give the number the paragraph *should* have had, in brackets.

sufficient facts before the Court to allow a jury to find that Plaintiff suffered cruel and unusual punishment because, during June and July 1997, his food was not served hot for a period of time and he was not permitted to heat it himself.

In addition, Plaintiff appears to allege that, in relation to Plaintiff's disputes over his food, Defendant McAdam engaged in retaliation through punitive work assignments. Plaintiff's complaint fails to suggest a clear motivation for retaliation, and for substantially the same reasons discussed *supra* pp. 546–47, the Court finds that there are not sufficient facts before it to allow a jury to find that any of the Defendants engaged in the retaliation that Plaintiff alleges.

### D.   *Confiscation of Legal Documents*

■ Plaintiff asserts that Defendants confiscated legal documents in a search of his cell on 28 May 1997, in violation of the Fourth Amendment. (*See* Compl. at 5 ¶ (5)(g), 7 ¶ (6)(d).) Defendants attempt to address that claim in their 7.1(a)3 Statement, but, in contravention of L.R. 7.1(a)3, that paragraph of their statement fails to "set forth a specific citation to the record where the fact is established." (*See* 7.1(a)(3) Statement at 4 ¶ "14" [19].) The Court accordingly will not credit the assertion therein that Defendants attempt to set forth as a fact. Again, counsel must take greater care to ensure that errors do not remain in the final drafts of motion papers.

Nonetheless, here, too, Plaintiff's claims are conclusory, and do not provide sufficient information to survive a summary judgment motion. Without having some specific information about the contents and quantity of the confiscated papers, it would be impossible to determine that their removal from Plaintiff's cell impermissibly compromised his right to litigate this or any other action. For the foregoing rea-

sons the Court finds that there are not sufficient facts before it to allow a jury to find that the search of Plaintiff's cell and confiscation of certain papers violated his rights.[5]

### E.   *Restrictions on Law Library Access*

■ Plaintiff claims that Defendants denied him access to the prison law library on nine days in June 1997, and after 5 July 1997 placed him on "Escort Only" status because of alleged misconduct, thereby causing him to miss more law library visits, in violation of the First, Sixth and Fourteenth Amendments. (*See* Compl. at 5–6 ¶¶ (5)(h), (i), 7 ¶ (6)(e).) Defendants have, however, submitted an uncontested statement of fact that prison authorities allowed Plaintiff adequate access to the law library throughout his incarceration at the facility, and that the "Escort Only" restriction was a sanction for misconduct. (*See* 7.1(a)3 Statement at 4 ¶¶ "15," "16" [20, 21].) Furthermore, the Court credits Defendants' arguments that prison authorities "may regulate the time, place, and manner of library use." (Mem. at 15 (citing *Johnson v. Moore,* 948 F.2d 517, 521 (9th Cir.1991)).) Conceivably, some regulations could be sufficiently ill-founded that a court could find a violation of the Constitution. The standard by which courts adjudicate delays arising from such regulations is, however, highly deferential to prison authorities; "so long as they are the product of prison regulations reasonably related to legitimate penological interests, ... delays [in library access] are not of constitutional significance, even where they result in actual injury...." *Lewis v. Casey,* 518 U.S. 343, 362, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996). In the present case, Plaintiff has not set forth facts sufficient to establish any injury, and Defendants have shown that any restrictions bear a reasonable relation to legitimate

5. In this motion, the disposition of the papers in question, upon Plaintiff's release from custody, might have provided useful facts in adjudicating the motion. In the absence of a response from Plaintiff, however, even the basic question of what ultimately happened to the papers remains unknown.

penological interests. For these reasons the Court finds that there are not sufficient facts before it to allow a jury to find that any restrictions of Plaintiff's access to the prison law library violated his rights.

### F. Negligent Medical Care

Plaintiff claims that Defendants neglected many aspects of his medical care required by his HIV-infected condition. (*See* Compl. at 6 ¶ (5)(1).) Defendants have rebutted this, asserting as facts—uncontroverted by Plaintiff—that the Department of Correctional Services ("DOCS") provides "more than adequate care" in treating HIV-infected inmates in accordance with strict DOCS rules and regulations, that the facility's Deputy Superintendent of Administration personally intervened on Plaintiff's behalf to secure optimal medical care for him, and that Plaintiff's DOCS medical records show that all of his medical needs "were met quickly and efficiently." (*See* Def. Accornero's Aff. at 2–3 ¶ 9 (Doc. 29, 2 Aug. 1999).) *See also Champion*, 76 F.3d at 486 (finding that if a pro se plaintiff does not respond to a summary judgment motion "with an affidavit or other evidence as provided by Rule 56(e), the factual assertions in the [movant's] affidavits [will] be accepted as true"). For these reasons the Court finds that there are not sufficient facts before it to allow a jury to find that Defendants neglected Plaintiff's medical care.

### G. Sanctions Constituted Cruel and Unusual Punishment

Plaintiff claims that Defendants imposed sanctions that were incommensurate with the minor infractions of prison rules he committed, and that that practice violated the Eighth Amendment's prohibition of cruel and unusual punishment. (*See* Compl. at 6 ¶ (5)(m).) These allegations are conclusory, and stand before the Court without supporting facts that would permit a finding favorable to Plaintiff's claim. The Court finds that there are not suffi-cient facts before it to allow a jury to find that the sanctions Plaintiff complains of constituted cruel and unusual punishment.

### H. Violation of Confidentiality

Plaintiff claims that Defendants violated his confidentiality rights, and thereby violated the Eighth Amendment. (*See* Compl. at 7 ¶ (6)(a), (b).) By this he seems to mean that Defendants did not protect the confidentiality of his HIV-infected condition, and it became known to unauthorized persons among the general inmate population, with adverse consequences for the conditions of his incarceration. Defendants have, however, submitted the uncontroverted facts that "[t]he identities of inmate patients were not revealed to anyone," and "[t]he facility did not intend to violate the confidentiality of any one inmate." (7.1(a)3 Statement at 2 ¶ 9.) The Court finds that there are not sufficient facts before it to allow a jury to find that Defendants violated Plaintiff's right to confidentiality of medical records.

Although the Court does not find that the record shows a genuine issue of material fact with respect to Plaintiff's claim of a violation of confidentiality rights, it cannot accept certain of the legal arguments advanced by counsel for Defendants. In particular, it must reject as preposterous the assertion that

> [P]laintiff may exercise his right to confidentiality through other means. He can safeguard his HIV positive status by denying any information that was inadvertently revealed to other inmates.

(Mem. at 5.) The most favorable explanation for counsel's action in advancing such a facially absurd argument is that it reflects a remarkable degree of naïveté. In the harsh world of relations among inmates, other prisoners will probably not take a denial of rumor at face value; the dissemination of unfavorable personal information is instead likely to be rapid, and to pose severe dangers to the inmate's health, well-being and safety. Accordingly, it is all the more crucial for DOCS

personnel to safeguard information such as an inmate's HIV status, and not to dismiss that responsibility with patronizing remarks that, if such information gets released, an inmate should "just deny it."

In addition, the meaning of what appears to be a grammatically incomplete sentence is not clear: "Their [other guards' and inmates'] information of the AIDS testing is greater than the accommodation of the right to confidentiality of the plaintiff." (*Id.*) Perhaps counsel intended to suggest that a correctional facility can best safeguard the health and safety of guards and inmates at large by conducting HIV testing, and that as long as strong measures are taken to insure that results are disclosed only to the subject individual and to *authorized* DOCS personnel, the risks to personal privacy are outweighed by a compelling interest: the benefits to the health and safety of the general population of officers and inmates at the facility. Counsel would need to develop that argument with greater clarity before the Court could assess its merits.

### I. *Unsafe Placement in Prison Living Quarters*

Plaintiff claims that his placements in prison dormitories subjected him to violence, discriminated against him on the basis of race and gender, and violated his Fourteenth Amendment Rights. (*See* Compl. at 7 ¶ (6)(c).) Defendants have, however, rebutted this with the assertion of fact that Plaintiff declined at least three offers of protective custody. (*See* 7.1(a)3 Statement at 4 ¶ "13" [18], and Ex. C.) Plaintiff has offered no reason to believe that an inmate whose prison living quarters were truly as dangerous as he contends would have rejected the opportunity for protective custody. The Court finds that there are not sufficient facts before it to allow a jury to find that the assignment of Plaintiff's prison quarters constituted discrimination or a violation of his Constitutional rights.

6. The signature is not clearly legible.

### J. *General Mistreatment*

Plaintiff accuses Defendants of intentional infliction of emotional distress, outrageous conduct, invasion of privacy, and gross negligence, which had severely adverse consequences for the conditions of his incarceration, including his relations with other inmates and with correction officers. (*See* Compl. at 6–7 ¶ (5)(n).) These allegations are conclusory, and in the context of Plaintiff's complaint encompass the general injuries he asserts arise out of more specific causes of action. Whereas the Court has found that those specific causes of action cannot survive Defendants' summary judgment motion, the Court now finds that there are not sufficient facts before it to allow a jury to find that Plaintiff has sustained the injuries he claims in ¶ (5)(n) of his complaint, nor that Defendants' actions constituted the wrongs he claims therein.

### IV. *The Significance of Plaintiff's Medical Condition*

The Court is reluctant to enter summary judgment against Plaintiff, in the shadow of questions arising from Plaintiff's silence on this motion. Plaintiff's serious health problems weigh heavily on the conscience, and with them the absence of a firm assurance that Plaintiff has failed to respond to this motion for reasons other than incapacity brought about by his illnesses. On 9 December 1998 Plaintiff wrote to the Court that he was diagnosed with cancer in January 1998. (*See* letter from Mr Leach to Magistrate Judge Hurd of 09.12.98, at 1 (Doc. 24, 17 Dec. 1998).) Attached to this letter was a letter dated 7 December 1998, from Plaintiff's physician, a Dr. Quinones,[6] at St. Luke's–Roosevelt Hospital Center in New York City. That letter stated, "Mr. William Leach is followed in Hema[tology]/Oncology Clinic for cutaneous and gastrointestinal Kaposi Sarcoma requiring chemotherapy." In his let-

ter, Plaintiff informed the Court that his "rigorous course of chemotherapy" was leaving him physically debilitated and undermining his ability to prosecute this action. (*See id.*)

Almost a year later, Plaintiff requested that the Honorable Gustave J. DiBianco, United States Magistrate Judge, appoint pro bono counsel on his behalf. He explained again that his health problems were hindering his prosecution of this action. Among his periods of hospitalization was 24 August to 5 September 1999; the deadline for his response to this summary judgment motion fell on 30 August 1999. (*See* letter from Mr Leach to Magistrate Judge DiBianco of 12.11.99 ("12.11.99 letter") (Doc. 32, 16 Nov. 1999); *see also supra* note 1.) He was subsequently hospitalized in the latter half of October 1999 with CMV (cytomegalovirus) retinal disease. (*See* 12.11.99 letter.) CMV retinitis is prominent as an opportunistic infection associated with AIDS. *See* Thomas Garthwaite, M.D., for Kenneth W. Kizer, M.D., M.P.H., Under Secretary for Health, Veterans Health Administration, Department of Veterans Affairs, *March 24, 1997, Undersecretary For Health's Information Letter: Recommendations for Prevention and Treatment of Opportunistic Infections in HIV and AIDS Patients* (last modified 25 Sep. 1997) <http://www.va.gov/publ/direc/heal th/infolet/109715.htm>.

Despite these many reasons for concern, in the end the Court can act only on what it knows. There is no question that the cruelly debilitating nature of the many illnesses that afflict persons suffering from AIDS could seriously undermine a person's ability to pursue legal action. Nonetheless, it is reasonable to expect that a litigant would in some fashion communicate such difficulties to the Court, even if only by writing a letter himself, or, in extreme circumstances, having a friend, family member, or physician write one for him. With such information, the Court might have a basis for accommodating those circumstances. Conversely, the absence of any such communication leaves the Court with no basis for acting on its concerns as discussed above.

In this situation, Plaintiff's aforementioned letter to Judge DiBianco, requesting appointment of counsel, takes on considerable significance. It is the only contact the Court has had from Plaintiff since well before the filing of the present motion, in August 1999. Because Plaintiff was capable of writing the letter to Judge DiBianco, the Court must assume that he was capable of communicating with the Court regarding Defendants' motion. Even the letter requesting appointment of counsel, however, makes not the slightest reference to the summary judgment motion. The Court furthermore respects the finding of Judge DiBianco that Plaintiff had not shown that his medical conditions had "compromise[d] his ability to litigate this matter on how own" to an extent that his circumstances warranted appointment of pro bono counsel on his behalf. (*See* Order at 3 n. 1 (Doc. 33, 3 Jan. 2000).) In view of these facts, the Court must conclude that Plaintiff's health does not mitigate his failure to respond to Defendants' motion.

The Court has reviewed all of Plaintiff's other claims and finds that they fail to raise a genuine issue of material fact for trial. Therefore, in light of Defendants' memorandum, the pleadings, the previously-filed affidavits, the affidavit of Defendant Accornero filed in support of the motion for summary judgment, and the exhibits, this Court now GRANTS Defendants' Motion for Summary Judgment.

### CONCLUSION

For the reasons stated above, it is hereby:

ORDERED that Defendants' motion for summary judgment against Plaintiff is **GRANTED**; and

IT IS FURTHER ORDERED that the Clerk of the Court shall enter **JUDG- MENT AGAINST PLAINTIFF,** and

IT IS FURTHER ORDERED that this case is **CLOSED,** and

IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of this order by regular mail upon the parties to this action.

IT IS SO ORDERED.