Anthony G. GILL, Plaintiff,

v.

V. HOADLEY, J. Giannotta, C. Gummerson, Walter Pelc, Rodney Ashby, L. Vanderwerff, Mr. Franczek, G. Gibson, Lt. Quinn, John J. Burns, J. Burge and Hans Walker, Defendants.

No. CIV.A.9:01–CV–0323 F.

United States District Court, N.D. New York.

May 21, 2003.

Anthony G. Gill, Rome, NY, Pro se.

Eliot Spitzer, Attorney General of the State of New York, Office of Attorney General (Lisa Ullman, Esq., Assistant Attorney General, Of Counsel), Syracuse, NY, for Defendants.

## REPORT AND RECOMMENDATION

PEEBLES, United States Magistrate Judge.

Plaintiff Anthony G. Gill, a New York State prison inmate who is no stranger either to this court or to civil rights litigation generally, has commenced this action *pro se* under 42 U.S.C. § 1983 complaining of alleged constitutional violations committed by the named defendants during the period of his confinement at the Auburn Correctional Facility ("ACF"). Plaintiff's complaint, which stems from incidents occurring in the first half of 2001, contains a variety of claims against the corrections employees sued; those claims can be divided into three groupings, entailing allegations that 1) defendants retaliated against Gill for his exercise of protected First Amendment rights, including his filing of grievances; 2) defendants violated his First Amendment free exercise rights by preventing him from attending religious services; and 3) defendants violated his Eighth Amendment rights by subjecting him to conditions tantamount to cruel and unusual punishment. Plaintiff's complaint seeks compensatory damages for mental anguish and emotional distress in varying amounts ranging from $200,000 to $500,000 against each of the twelve defendants.

Defendants initially responded to plaintiff's filing of an amended complaint—the pleading now before the court—by seeking its dismissal for failure to state a cause of action. Plaintiff has since opposed that motion and cross-moved for summary judgment in his favor. Defendants oppose that motion, arguing that it is premature since they have not yet had an opportunity to conduct discovery concerning plaintiff's claims, and additionally have cross-moved seeking summary judgment dismissing plaintiff's complaint.

Because I find that certain of plaintiff's claims cannot withstand Rule 12(b)(6) scrutiny, I recommend their dismissal. Others, however, have facial merit; as to those, I find that while some are subject to dismissal as a matter of law, others implicate triable issues of material fact which preclude the entry of summary judgment in favor of either the plaintiff or defendants, particularly since pretrial discovery has not yet occurred.

## I. BACKGROUND

Since this matter is currently before the court both on motion by the defendants challenging the legal sufficiency of plaintiff's complaint and as a result of the filing of cross-motions for summary judgment, I will recite the essential facts as alleged in plaintiff's amended complaint, and will note defendants' counter position concerning any contested allegation.

### A. *Plaintiff's Amended Complaint*

Plaintiff's claims arise out of his confinement within the ACF. Amended Complaint (Dkt. No. 20) ¶ 1. Plaintiff asserts that on or about January 29, 2001, after just having been released from keeplock confinement due to a disciplinary report allegedly "orchestrated" by Corrections Officer V. Hoadley, a defendant in this action, Hoad-

ley instructed fellow Corrections Officer Randolph Calhoun—who is not named as a defendant—to confine Gill to his cell, allegedly as a result of grievances filed by Gill against Hoadley. *Id.* ¶¶ 2–5. Plaintiff alleges that Corrections Sergeant J. Giannotta then advised Gill that he would not "tolerate any grievances against [his] officers" and threatened him with confinement in the facility's special housing unit ("SHU") if he filed any further grievances. *Id.* Gill claims that during the course of this conversation defendant Giannotta was hostile and abusive towards him, including by using profanity. *Id.* ¶ 3.

Plaintiff also maintains that after being placed in keeplock he was deprived of his noon lunch meal due to the fact that his disciplinary confinement was initiated after keeplock "feed-up trays" were delivered to his cell block. *Id.* ¶ 6, n. 3. Additionally, plaintiff asserts that while confined in keeplock he was denied his one hour daily keeplock exercise for the four day period ending on February 1, 2001 (*id.* ¶ 9), and that he was denied the opportunity to attend an evening Jehovah Witness religious service on January 29, 2001.[1] Amended Complaint (Dkt. No. 20) ¶ 10, n. 4, Exh. D.

Plaintiff's keeplock confinement was followed on or about January 30, 2001 with the issuance of a disciplinary report, authored by defendant Hoadley, charging Gill with violation of prison rules 107.11 (harassment) and 107.20 (lying). Amended Complaint (Dkt. No. 20) ¶ 7, Exh. B. A

Tier II disciplinary hearing was conducted on or about February 2, 2001 by Corrections Lieutenant Ashby, another named defendant, concerning the Hoadley disciplinary report.[2] Amended Complaint (Dkt. No. 20) ¶ 11. At the conclusion of the hearing the charges against Gill were ordered dismissed. Amended Complaint (Dkt. No. 20) ¶ 11. At the time of dismissal, plaintiff had served four days of keeplock confinement in his cell. *Id.*

The second facet of plaintiff's complaint stems from his filing on or about April 9, 2001 of a complaint with ACF Deputy Superintendent of Security J. Burns, another named defendant, related to allegations of the posting of Gill's photograph in the ACF Messhall/Kitchen area. Amended Complaint (Dkt. No. 20) ¶ 12, n. 5. According to the plaintiff, that report led to his being placed on keeplock confinement status on or about April 12, 2001, and the subsequent receipt on April 13, 2001 of a disciplinary report, authored by Corrections Officer Walter Pelc, alleging violation of prison rule 107.20 (lying). *Id.* ¶¶ 12–14, Exh. F. A Tier II disciplinary hearing was commenced by defendant Ashby on April 17, 2001 concerning this latest disciplinary report, although the hearing was later adjourned until April 19, 2001. *Id.* ¶¶ 17–19. At the conclusion of the hearing defendant Ashby found plaintiff guilty of the infraction alleged, and imposed a sentence of twenty-one days of keeplock confinement,

1. It appears, however, that the request was made to and denied by Corrections Captain Gummerson prior to the ordering of January 29, 2001 keeplock, and that the denial was based upon plaintiff's "chronic disciplinary problems". Amended Complaint (Dkt. No. 20) ¶ 10, n. 4, Exh. D.

2. The DOCS conducts three types of inmate disciplinary hearings. Tier I hearings address the least serious infractions, and can result in minor punishments such as the loss

of recreation privileges. Tier II hearings involve more serious infractions, and can result in penalties which include confinement for a period of time in the Special Housing Unit (SHU). Tier III hearings concern the most serious violations, and could result in unlimited SHU confinement and the loss of "good time" credits. *See Hynes v. Squillace,* 143 F.3d 653, 655 n. 1 (2d Cir.), *cert. denied,* 525 U.S. 907, 119 S.Ct. 246, 142 L.Ed.2d 202 (1998).

with a corresponding loss of privileges. *Id.* ¶ 20, Exh. I. Plaintiff alleges that his appeal from the Tier II disposition, filed with ACF Superintendent Hans Walker on April 19, 2001, went unanswered. *Id.* ¶ 22.

As a result of the Tier II disposition plaintiff was confined in keeplock status in his cell for a twenty-one day period, ending on May 3, 2001. *Id.* ¶ 23. During that time plaintiff asserts he was denied permission to attend Jehovah Witness religious services on April 13, 2001, April 16, 2001, April 20, 2001, April 23, 2001, April 27, 2001, and April 30, 2001. *Id.* ¶ 16, Exh. G.

The third aspect of plaintiff's complaint stems from an incident which occurred on May 4, 2001. *Id.* ¶ 24. On that date, during the course of a "pat frisk" in a school building basement, plaintiff's watch was lost. *Id.* ¶ 24. Later that afternoon plaintiff was placed on keeplock status, and the following day received a disciplinary report, authored by Corrections Officer L. Vanderwerff and endorsed by Corrections Officers Franczek and Gibson—all named defendants—alleging violation of prison rules 107.20 (lying), 106.10 (disobeying a direct order) and 104.13 (engaging in disturbance). Amended Complaint (Dkt. No. 20) ¶ 26, Exh. K. Plaintiff alleges that this disciplinary report was a direct result of his accusations that corrections officers had taken his watch. *Id.* ¶ 27. A Tier II disciplinary hearing was subsequently held in connection with those charges, commencing on May 7, 2001 by Corrections Lieutenant Quinn, another named defendant. *Id.* ¶ 29. The hearing was thereafter adjourned, and continued on May 9, 2001, and again to a later date, based upon the unavailability of Corrections Officer Vanderwerff. *Id.* ¶¶ 30–32. During the hearing, which was ultimately conducted on May 23, 2001, plaintiff alleges that defendants Vanderwerff and Franczek sub-

mitted false testimony, resulting in a finding of guilt and a sentence of twenty-one days of punitive keeplock confinement, with a corresponding loss of privileges. *Id.* ¶¶ 32–34, Exh. K. Plaintiff appealed to ACF Superintendent Walker from that Tier II finding on May 23, 2001. *Id.* ¶ 36. That determination was subsequently affirmed on May 25, 2001 by ACF First Deputy Superintendent J. Burge. *Id.* ¶ 36, Exh. K.

As a result of the Tier II finding and affirmance plaintiff served a total of twenty-one days in keeplock disciplinary confinement. Amended Complaint (Dkt. No. 20) ¶ 37. During that time plaintiff applied for but was denied permission to attend Jehovah Witness religious services on May 11, 14, 18 and 21, 2001. *Id.* ¶ 28, Exh. L.

### B. *Defendants' Counterstatement*

Defendants' contentions concerning the January 29, 2001 incident differ slightly, though not materially, from those alleged by the plaintiff. Defendant Hoadley acknowledges issuing a misbehavior report on that date, and that the misbehavior report stems from plaintiff's filing of an inmate grievance. Hoadley Aff. (Dkt. No. 51) ¶¶ 8–9. Hoadley maintains, however, that the misbehavior report was written not in retaliation for the grievance, but rather to address the fact that it contained false information. *Id.* ¶ 9. Defendant Hoadley also denies depriving the plaintiff of lunch during the time that he was on keeplock status as a result of the January 29, 2001 incident. *Id.* ¶¶ 12–13. Similarly, defendant Hoadley denies that Gill was not allowed to exercise during that time period. *Id.* ¶ 14.

Defendants also dispute certain of the plaintiff's allegations surrounding the April 12, 2001 keeplock confinement. While plaintiff, as previously indicated, alleges

that the confinement was a direct result of his having filed a written complaint on April 9, 2001 to Deputy Superintendent Burns, Burns has no recollection of having received the April 9, 2001 complaint from Gill.[3] Burns Aff. (Dkt. No. 60) ¶ 15.

In an affidavit submitted by John W. Burge, who in his prior capacity as First Deputy Superintendent at ACF was required to review appeals from Tier II disciplinary determinations as well as review and respond to complaints filed by inmates at the facility through the inmate grievance procedure, he confirms having received and responded to a grievance concerning the initial Hoadley misbehavior report, stating that it had resulted in dismissal of the report. Burge Aff. (Dkt. No. 61) ¶¶ 2, 5–8, Exh. A. The report goes on to indicate, however, that at the time Gill was subject to keeplock confinement resulting from another matter, and thus the issuance by defendant Hoadley of the misbehavior report did not affect Gill's confinement status.[4] Burge Aff. (Dkt. No. 61) ¶ 9. Defendant Burge also responded to a grievance filed by plaintiff concerning Deputy Superintendent Burns' alleged failure to respond to his April 2001 complaint. Burge Aff. (Dkt. No. 61) ¶ 10, Exh. B. That grievance was denied, based upon defendant Burns' claim that he never saw plaintiff's request. Id.

Defendant Burge was also asked to review the April 19, 2001 Tier II determination of Lieutenant Ashby. Burge Aff. (Dkt. No. 61) ¶ 11, Exh. C. That appeal resulted in a reversal and expungement of plaintiff's records. Id. ¶ 12, Exh. D.

Defendants' allegations concerning the May 2001 incident also differ significantly from plaintiff's version. According to the defendants, the circumstances giving rise to the incident were set in motion when it was discovered that plaintiff's boots had custom arch supports which inmates are not permitted to have without a medical permit. Vanderwerff Aff. (Dkt. No. 56) ¶¶ 6–7; Gibson Aff. (Dkt. No. 58) ¶ 8. During the course of an investigation regarding the boots, plaintiff removed his watch but later, according to defendants, put it in his pocket and then made false accusations against corrections officers participating in the event, including Corrections Officers Vanderwerff and Franczek, accusing them of taking the watch. Vanderwerff Aff. (Dkt. No. 56) ¶¶ 8–9; Gibson Aff. (Dkt. No. 58) ¶¶ 9–11. Plaintiff's accusations became "agitated" and were made in front of between twenty-five and thirty inmates. Vanderwerff Aff. (Dkt. No. 56) ¶ 10. Because of the plaintiff's actions and the false nature of his accusations, plaintiff was issued a misbehavior report. Id. ¶¶ 11–13, Exh. A. Officer Vanderwerff ordered plaintiff confined on keeplock status pending a hearing on the charges. Id. ¶ 15.

Defendants have also responded to plaintiff's allegations concerning the religious service permission denials. According to the defendants, under DOCS Directive 4202, Section J, an inmate confined to his or her cell on keeplock status may request permission to attend congregate

---

3. Burns maintains that had it been received he would have referred it elsewhere for investigation. Burns Aff. (Dkt. No. 60) ¶ 15. Corrections Officer Walker Pelc, the author of the April 12, 2001 disciplinary report, states that he was apparently asked to investigate plaintiff's complaint concerning the photograph incident and, upon doing so, found no evidence to support the claim. Pelc Aff. (Dkt. No. 54) ¶¶ 6–8. A misbehavior report was ultimately issued as a result of this finding, defendant Pelc having apparently concluded that the plaintiff had fabricated the statements contained in his complaint. Id. ¶¶ 9–11.

4. Defendant Burge has since been promoted, and is now the ACF Superintendent. Burge Aff. (Dkt. No. 61) ¶ 2.

religious services utilizing a designated Form 2175; any such request must be made at least forty-eight hours prior to the scheduled service. DOCS Directive 4202; *see also* Burns Aff. (Dkt. No. 60) ¶ 5, Exh. A. Although plaintiff's requests for permission to attend religious services were all addressed to defendant Burns, as ACF Deputy Superintendent for Security, they were referred by him as a matter of routine to Corrections Captain Gummerson for a response. Burns Aff. (Dkt. No. 60) ¶¶ 2, 9; Gummerson Aff. (Dkt. No. 53) ¶ 6. Captain Gummerson acknowledges receipt and denial of requests by Gill to attend services on January 29, 2001, February 2, 2001, April 27, 2001, May 11, 2001, May 14, 2001, May 18, 2001 and May 21, 2001 and states that those requests were denied on the basis of plaintiff's disciplinary problems, described by Captain Gummerson as "chronic". Gummerson Aff. (Dkt. No. 53) ¶¶ 7–9, Exh. A. To buttress this the defendants have submitted a printout of plaintiff's disciplinary history, showing that during the first half of 2001 plaintiff had a number of disciplinary charges made and sustained against him. *Id.* ¶ 10, Exh. B. Captain Gummerson states that he lacks any specific recollection of other requests allegedly made by Gill, but noted his assumption that any that do not contain notations by him were never received. *Id.* ¶ 8.

## II. *PROCEDURAL HISTORY*

Plaintiff commenced this action on March 6, 2001, and thereafter was granted leave to proceed *in forma pauperis*. Dkt. Nos. 1, 4. Named as defendants in plaintiff's initial complaint were Corrections Officer Hoadley, Corrections Sergeant Giannotta, and Corrections Captain Gummerson. Dkt. No. 1.

On May 8, 2001 plaintiff sought leave to file a supplemental complaint in the action to name four additional defendants, including Corrections Officer Walter Pelc, Corrections Lieutenant Rodney Ashby, Deputy Superintendent Burns, and Superintendent Hans Walker, as well as to complain of additional incidents occurring subsequent to the filing of his initial complaint. Dkt. No. 8. That motion, which was not opposed, was granted, as a result of the issuance by me of an order dated August 1, 2001. Dkt. No. 15. In a second motion by plaintiff for leave to amend, filed on August 16, 2001, plaintiff sought permission to name five new defendants, in addition to the four added through his first motion, for a total of nine additional defendants. Dkt. No. 17. That motion was also subsequently granted by order issued by me on October 10, 2001, and the five new defendants added as a result of that order include Corrections Officers Vanderwerff, Franczek, and Gibson; Corrections Lieutenant Quinn; and First Deputy Superintendent Burge. Dkt. No. 19. An amended complaint, which is the pleading currently before the court, was subsequently filed in accordance with that order on October 17, 2001.[5] Dkt. No. 20.

In response to the filing of plaintiff's amended complaint, defendants moved on February 27, 2002 seeking its dismissal pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Dkt. Nos. 37–38. That motion was met by plaintiff's filing of papers in opposition and in support of a cross-motion for summary judgment in his favor. Dkt. Nos. 41–42. De-

---

**5.** In the interim defendants filed an answer on September 25, 2001 to plaintiff's first amended complaint. *See* Dkt. No. 18. Since plaintiff's first amended complaint was never filed, in my October 10, 2001 order I directed the clerk to strike that pleading. *See* Dkt. No. 19, at 2 n. 1, 3.

fendants have since submitted papers urging that plaintiff's summary judgment motion be denied as premature, inasmuch they have not yet had the benefit of discovery, and asking that the court enter summary judgment dismissing plaintiff's complaint in its entirety.[6] Dkt. Nos. 47–61.

The parties' cross-motions, which are now ripe for determination, have been referred to me for the issuance of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern District of New York Local Rule 72.3(c). *See also* Fed.R.Civ.P. 72(b).

## III. DISCUSSION

### A. Rule 12(b)(6) Standard

Since defendants' initial motion to dismiss calls into question the legal sufficiency of plaintiff's allegations, when accepted as true, I will address that aspect of the cross-motions before proceeding to address the parties' motions for summary judgment.

A court may not dismiss an action pursuant to Rule 12(b)(6) unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Cohen v. Koenig,* 25 F.3d 1168, 1171–72 (2d Cir. 1994) (citing, *inter alia, Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957)). In deciding a Rule 12(b)(6) motion, the court must accept the material facts alleged in the complaint as true. *Id.* (citing *Cooper v. Pate,* 378 U.S. 546, 546, 84 S.Ct. 1733, 1733, 12 L.Ed.2d 1030 (1964) (per curiam)).

### B. Defendants' Dismissal Motion

#### 1. Retaliation Claims

In their motion, defendants invite the court to find that as a matter of law, as currently pleaded, plaintiff's retaliation claims are legally deficient. The original basis for that motion centered around the assertion that plaintiff is unable to establish that his exercise of First Amendment rights, in the form of filing inmate grievances, was chilled as a result of defendants' actions—a legal prerequisite to maintenance of such a claim. *See* Defendants' Dismissal Memorandum (Dkt. No. 38) at 6–8. In a supplemental submission to the court, defendants have also argued that the harm alleged to have befallen Gill as a result of defendants' acts of alleged retaliation is *de minimis,* and does not rise to a level sufficient to constitute adverse action for the purposes of supporting a retaliation claim. *See* Letter dated December 18, 2002 from Douglas J. Goglia, Esq. (undocketed). In making this argument defendants rely, *inter alia,* upon a decision by District Judge David N. Hurd in *Gill v. Tuttle,* No. 9:00–CV–585 (N.D.N.Y. Dec. 17, 2002), dismissing a similar claim by Gill for failure to establish the requisite level of adverse action.

In order to state a *prima facie* claim under section 1983 for retaliatory conduct, a plaintiff must advance non-conclusory allegations establishing that 1) the conduct at issue was protected; 2) the defendants took adverse action against the plaintiff; and 3) there was a causal connection between the protected activity and the adverse action—in other words, that the

---

**6.** After receiving plaintiff's summary judgment motion defendants' counsel wrote to the court requesting that plaintiff's papers be construed *solely* as an opposition to defendants' motion to dismiss, and not as a summary judgment motion. That request was denied and defendants were directed to respond to the summary judgment cross-motion prior to July 1, 2002. Dkt. No. 44. That time was later extended, at defendants' request, until September 1, 2002. Dkt. No. 46.

protected conduct was a "substantial or motivating factor" in the prison officials' decision to take action against the plaintiff. *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 287, 97 S.Ct. 568, 576, 50 L.Ed.2d 471 (1977); *Dawes v. Walker,* 239 F.3d 489, 492 (2d Cir.2001). If the plaintiff sustains this burden, the defendants must show by a preponderance of the evidence that they would have taken action against the plaintiff "even in the absence of the protected conduct." *Mount Healthy,* 429 U.S. at 287, 97 S.Ct. at 576. If taken for both proper and improper reasons, then, state action may be upheld if the action would have been taken based on the proper reasons alone. *Graham v. Henderson,* 89 F.3d 75, 79 (2d Cir.1996) (citations omitted).

■ It is true that retaliation claims are subject to potential abuse by inmates and that, accordingly, when pleaded in wholly conclusory terms such claims are subject to particularly close scrutiny. *Flaherty v. Coughlin,* 713 F.2d 10, 13 (2d Cir.1983); *see also Graham v. Henderson,* 89 F.3d 75, 79 (2d Cir.1996) (citing *Flaherty* ). In this instance, however, plaintiff has been exceedingly specific when pleading the First Amendment protected activity engaged in as well as the resulting consequences faced by him. Moreover, in at least one instance the very documents generated by the defendants and included among the exhibits attached to plaintiff's amended complaint reveal that indeed a misbehavior report, alleged by the plaintiff to be false, was specifically issued on January 3, 2001 in response to plaintiff's filing of an inmate grievance alleged by the defendants to contain false statements. *See* Amended Complaint (Dkt. No. 20) ¶ 7, Exh. B. Under these circumstances I find, particularly giving plaintiff the benefit of every inference, that he has adequately pleaded a retaliation claim.

As noted, in seeking dismissal of plaintiff's retaliation claims at this early juncture, defendants question whether the plaintiff will be able to establish that his First Amendment rights were actually chilled by defendants' actions, in that he was deterred from resorting to the inmate grievance process as a result of defendants' actions. Simply stated, defendants assert that Gill's proven record as a frequent litigator, coupled with the sheer number of grievances filed by him, show that he persisted in such efforts undaunted by defendants' actions. Defendants assert that plaintiff's failure to establish a chilling of his First Amendment rights precludes him from prevailing on his retaliation claims, citing *Curley v. Village of Suffern,* 268 F.3d 65 (2d Cir.2001), in support of this position. Defendants' Dismissal Memorandum (Dkt. No. 38) at 7.

While it may ultimately be proven on a more fully developed record that plaintiff Gill was not dissuaded from continuing his filing of grievances as a result of defendants' actions, and thus will fail in his retaliation claims, it cannot be said at this juncture that his complaint fails to state a retaliation claim upon which relief may be granted.

Defendants also assert, as noted above, that plaintiff has not alleged the level of adverse action required to support a retaliation claim. Plaintiff's complaint specifically alleges that each of the three misbehavior reports at issue—written on January 30, 2001, April 13, 2001 and May 5, 2001—resulted in keeplock confinement, with a corresponding reduction in privileges, for periods of four days, twenty-one days and twenty-one days respectively. *See* Amended Complaint (Dkt. No. 20) ¶¶ 11, 20, 34. This fact readily distinguishes Judge Hurd's decision in *Gill v. Tuttle,* in which he found that nine days in keeplock confinement represented a *de*

*minimis* adverse action. While once again, it may be found at trial or on a motion for summary judgment that plaintiff's keeplock confinement as alleged did not rise to a level sufficient to support a finding of adverse action, I am not prepared to say as a matter of law in the context of a motion to dismiss that this is the case.[7] *E.g., Auleta v. LaFrance,* 233 F.Supp.2d 396, 401 (N.D.N.Y.2002) (Kahn, J.) ("at [12(b)(6)] stage in the action, Plaintiff's claim that he was placed in keeplock for 7½ days is properly construed as alleging an adverse action").

In sum, I recommend a finding that plaintiff's retaliation claims are sufficient at this juncture to withstand defendants' motion seeking dismissal as a matter of law under Federal Rule 12(b)(6).

### 2. *Religious Service Free Exercise Claim*

In their dismissal motion, defendants also seek a finding that plaintiff's religious free exercise infringement claims are legally deficient. In support of this request, defendants argue that plaintiff's free exercise right was not substantially burdened as a result of the limited number of religious services which he was unable to attend while in keeplock confinement.

 Unquestionably, under the First Amendment's free exercise clause inmates are guaranteed the right to participate in congregate religious services. *See, e.g., Salahuddin v. Coughlin,* 993 F.2d 306, 308 (2d Cir.1993) (citing cases). The First Amendment right, however, is limited by valid penological concerns, including those relating to institutional security. *O'Lone v. Estate of Shabazz,* 482 U.S. 342, 348, 107 S.Ct. 2400, 2404, 96 L.Ed.2d 282 (1987); *Salahuddin,* 993 F.2d at 308. As the Sec-

ond Circuit has observed, determination of whether a refusal to permit attendance at a religious service impinges upon an inmates's First Amendment free exercise right is ."one of reasonableness, taking into account whether the particular [act] affecting [the] right ... is 'reasonably related to legitimate penological interests.'" *Benjamin v. Coughlin,* 905 F.2d 571, 574 (2d Cir.), *cert. denied,* 498 U.S. 951, 111 S.Ct. 372, 112 L.Ed.2d 335 (1990).

In support of their motion, defendants have argued that plaintiff missed only a limited number of services and that his free exercise rights were therefore not adversely affected by the various denials of which he now complains. Defendants' Dismissal Memorandum (Dkt. No. 38) at 8–10. Plaintiff's complaint, together with its exhibits, on the other hand, reflect a total of twelve submitted requests to attend Jehovah Witness services, and alleges that each was denied. Amended Complaint (Dkt. No. 20) ¶¶ 10, 16, 28, Exhs. D, L.

 While once again it may ultimately be found, based upon a more fully developed record, that this claim is legally deficient, in that plaintiff's allegations fail to establish an infringement of constitutional proportions upon his free exercise rights, and that the denials were proper based upon legitimate penological concerns, it is premature at this juncture, giving plaintiff the benefit of all inferences, to find as a matter of law that plaintiff cannot establish any set of facts sufficient to support a free exercise claim. I therefore recommend denial of defendants' motion to dismiss this cause of action.

### 3. *Qualified Immunity*

In their dismissal motion, defendants also seek dismissal of plaintiff's free exer-

---

**7.** I note that the decision rendered in *Gill v. Tuttle* was in the context of a motion for summary judgment, and consequently (presumably) on a more fully developed record.

cise claim based upon qualified immunity. Defendants' Dismissal Memorandum (Dkt. No. 38) at 10–12. Defendants' supporting memorandum makes clear that the request is based upon the assumption that plaintiff can only establish the denial of his request to attend a single religious service. *Id.* at 11–12. In making this argument, defendants rely heavily upon *Gill v. DeFrank,* 98 Civ. 7851, 2000 WL 270854 (S.D.N.Y. Mar. 13, 2000).

■ Qualified immunity shields government officials performing discretionary functions from liability for damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). Accordingly, governmental officials sued for damages "are entitled to qualified immunity if 1) their actions did not violate clearly established law, or 2) it was objectively reasonable for them to believe that their actions did not violate such law." *Warren v. Keane,* 196 F.3d 330, 332 (2d Cir.1999) (citing *Salim v. Proulx,* 93 F.3d 86, 89 (2d Cir.1996)). The law of qualified immunity seeks to strike a balance between overexposure by government officials to suits for violations based upon abstract rights and an unduly narrow view which would insulate them from liability in connection with virtually all discretionary decisions. *Locurto v. Safir,* 264 F.3d 154, 162–63 (2d Cir.2001); *Warren,* 196 F.3d at 332. As the Second Circuit has observed,

> [q]ualified immunity serves important interests in our political system, chief among them to ensure that damages suits do not unduly inhibit officials in the discharge of their duties by saddling individual officers with personal monetary liability and harassing litigation.

*Provost v. City of Newburgh,* 262 F.3d 146, 160 (2d Cir.2001) (internal quotations omitted) (citing, *inter alia, Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics,* 456 F.2d 1339, 1348 (2d Cir. 1972)).

Qualified immunity analysis involves a three step inquiry. *Harhay v. Town of Ellington Bd. of Ed.,* 323 F.3d 206, 211 (2d Cir.2003). As a threshold matter it must first be determined whether, based upon the facts alleged, plaintiff has facially established a constitutional violation. *Id.* If the answer to this inquiry is in the affirmative, the court must then turn its focus to whether the right in issue was clearly established at the time of the alleged violation. *Id.* (citing *Saucier v. Katz,* 533 U.S. 194, 201–02, 121 S.Ct. 2151, 2156, 150 L.Ed.2d 272 (2001)); *see also Poe v. Leonard,* 282 F.3d 123, 132–33 (2d Cir.2002). Finally, if the plaintiff had a clearly established, constitutionally protected right that was violated, he or she must demonstrate that it was not objectively reasonable for the defendant to believe that his action did not violate such law. *Harhay,* 323 F.3d at 211; *Poe,* 282 F.3d at 133 (quoting *Tierney v. Davidson,* 133 F.3d 189, 196 (2d Cir. 1998) (quoting, in turn, *Salim,* 93 F.3d at 89)).

Although it is well-established that qualified immunity issues should be decided "at the earliest possible stage of a litigation" (*Anderson v. Creighton,* 483 U.S. 635, 646 n. 6, 107 S.Ct. 3034, 3042 n. 6, 97 L.Ed.2d 523 (1987)), a finding of qualified immunity is only appropriate at the Rule 12(b)(6) stage if qualified immunity is apparent from the face of the complaint, since such analysis generally depends upon specific factual circumstances. *Green v. Maraio,* 722 F.2d 1013, 1018–19 (2d Cir.1983) (citations omitted); *Colman v. Vasquez,* 142 F.Supp.2d 226, 239 (D.Conn.2001) (citing

*Green* ); *Quinones v. Howard,* 948 F.Supp. 251, 253 (W.D.N.Y.1996) (same).

■ Although an early adjudication of the claim of qualified immunity is critical to the policy underlying the doctrine, nonetheless I recommend against the determination of that defense at this juncture based upon the circumstances of plaintiff's claims. As previously indicated, I have found that plaintiff's complaint adequately pleads a religious deprivation claim of constitutional significance. Moreover, in this instance it is unquestioned that the right of an inmate to freely exercise his or her religion by attending congregate religious services, absent legitimate penological concerns mitigating to the contrary, was and has been clearly established at the relevant times. *See Salahuddin v. Coughlin,* No. 88 CIV. 5754, 1996 WL 492994, at *4 (S.D.N.Y. Aug. 28, 1996) (collecting Second Circuit case law dating back as far as 1972).

Under the governing test, then, the qualified immunity analysis shifts in focus to whether the defendants' actions either did not violate that clearly established law, or it was objectively reasonable for them to have believed that their actions did not violate federal law. *Harhay,* 323 F.3d at 211; *Poe,* 282 F.3d at 132–33. It may be, upon a more fully developed record, that the defendants can establish that their actions do not provide a basis to find that they knew or reasonably should have known that they were violating plaintiff's clearly established rights. At this stage, however, I cannot say with the requisite degree of certainty that defendants are entitled to dismissal on the basis of quali-

fied immunity as a matter of law. *See, e.g., Espinal v. Goord,* No. 00 Civ. 2242, 2001 WL 476070, at *15 (S.D.N.Y. May 7, 2001) (if trier of fact were to find deliberate indifference conduct cannot be objectively reasonable). Accordingly, I recommend that defendant's motion for dismissal under Rule 12(b)(6) based on qualified immunity be denied, without prejudice to its renewal based upon a more fully developed record.

### 4. *Eighth Amendment Claims*

One of the three principal components of plaintiff's complaint is his claim that defendants subjected plaintiff to cruel and unusual punishment, in violation of the Eighth and Fourteenth Amendments to the Constitution.[8] Amended Complaint (Dkt. No. 20) at 1, (C). Plaintiff's Eighth Amendment claim is implicated in his first and second causes of action, alleging denial of a single noon lunch meal and a one hour exercise period for each of the four days served in keeplock confinement; plaintiff's fifth, six and seventh causes of action, arising from twenty-one days of keeplock confinement without any specific deprivations being described; and plaintiff's eighth, ninth and tenth causes of action, again resulting from a twenty-one day period of keeplock confinement and loss of privileges. Defendants seek dismissal of these claims both as legally deficient as a matter of law, and based upon their lack of personal involvement.

### a) *Personal Involvement*

■ Personal involvement of defendants in alleged constitutional deprivations is a

---

8. In the event that plaintiff's complaint, liberally construed, could be interpreted as including a procedural process claim, it would be subject to dismissal for failure to establish a cognizable liberty interest based upon the small number of days served in keeplock confinement as a result of the three separate incidents, even when considered in the aggregate. *E.g., McIntosh v. Daddario,* No. 94 CIV. 6709, 1998 WL 118156, at *3 (S.D.N.Y. Mar. 17, 1998) (no liberty interest in forty-five days keeplock confinement; noting that keeplock confinement is less restrictive than SHU confinement).

prerequisite to an award of damages under section 1983. *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994) (citing *Moffitt v. Town of Brookfield,* 950 F.2d 880, 885 (2d Cir.1991) and *McKinnon v. Patterson,* 568 F.2d 930, 934 (2d Cir.1977), *cert. denied,* 434 U.S. 1087, 98 S.Ct. 1282, 55 L.Ed.2d 792 (1978)). In order to prevail on a section 1983 cause of action against an individual, a plaintiff must show some tangible connection between the constitutional violation alleged and that particular defendant. *See Bass v. Jackson,* 790 F.2d 260, 263 (2d Cir.1986).

■ Upon analysis of plaintiff's amended complaint, Corrections Officer Hoadley was involved in at least one of the alleged deprivations, and thus faces potential liability. The same is true, accepting plaintiff's allegations as pleaded, with regard to Corrections Sergeant J. Giannotta, as well as Corrections Officers Pelc, Vanderwerff, Franczek and Gibson, since they allegedly set in motion the events which resulted in the deprivations by either confining plaintiff in keeplock or filing misbehavior reports that resulted in plaintiff's keeplock. Giving the plaintiff the benefit of every inference, as I am inquired to do at this juncture, I cannot say plaintiff will be unable to prove a set of facts establishing liability on the part of these defendants, and thus cannot exonerate them at this earliest juncture based upon lack of personal involvement.

■ The same cannot be said with regard to many of the other named defendants, several of whom are sued in light of their supervisory positions. A supervisor cannot be liable for damages under section 1983 solely by virtue of being a supervisor—there is no *respondeat superior* liabil-

ity under section 1983. *Blyden v. Mancusi,* 186 F.3d 252, 264 (2d Cir.1999); *Wright,* 21 F.3d at 501. A supervisory official can, however, be liable in one of several ways: 1) the supervisor may have directly participated in the action; 2) the supervisor, after learning of the violation through a report or appeal, may have failed to remedy the wrong; 3) the supervisor may have created or allowed to continue a policy or custom under which unconstitutional practices occurred; or 4) the supervisor may have been grossly negligent in managing the subordinates who caused the unlawful event. *Wright,* 21 F.3d at 501; *Williams v. Smith,* 781 F.2d 319, 323–24 (2d Cir.1986); *see also Spencer v. Doe,* 139 F.3d 107, 112 (2d Cir.1998) (citing *Williams,* 781 F.2d at 323–24).

i) *Gummerson and Burns*

■ Plaintiff's allegations concerning defendants Gummerson and Burns exclusively involve plaintiff's First Amendment free religious exercise claims, and do not relate to his Eighth Amendment claim in any way. Amended Complaint (Dkt. No. 20) ¶¶ 10, 11, 28, 43, 45. Accordingly, I recommend a finding that Gummerson and Burns lacked personal involvement in plaintiff's Eighth Amendment claims at the motion to dismiss stage.

ii) *Ashby and Quinn*

■ Plaintiff sues defendants Ashby and Quinn in their capacity as Tier II hearing officers. In April of 2001, defendant Ashby found plaintiff guilty of prison violation 107.20 (lying), which resulted in Gill's keeplock confinement for twenty-one days.[9] Amended Complaint (Dkt. No. 20) ¶¶ 17–21. Plaintiff alleges that during May of 2001 defendant Quinn found plain-

---

9. As plaintiff acknowledges, defendant Ashby dismissed charges in February of 2001 related to a misbehavior report written by defendant Hoadley. Amended Complaint (Dkt. No. 20) ¶ 11.

tiff guilty of the charges contained in the underlying misbehavior report authored by defendant Vanderwerff, resulting in twenty-one days keeplock. Amended Complaint (Dkt. No. 20) ¶¶ 29–35. Plaintiff alleges that these two twenty-one day periods of confinement were in violation of his Eighth Amendment right to be free of cruel and unusual punishment. Accordingly, I cannot say as a matter of law that defendants Ashby and Quinn lack personal involvement in plaintiff's Eighth Amendment allegations.

### iii) *Burge*

Plaintiff alleges that defendant Burge upheld the faulty Tier II determination by defendant Quinn. *Id.* ¶ 36. If that determination was constitutionally infirm by Eighth Amendment standards, Burge had an opportunity to correct it. I therefore recommend against dismissal of defendant Burge based solely upon his lack of personal involvement in plaintiff's Eighth Amendment claims.

### iv) *Walker*

Plaintiff alleges that he appealed defendant Ashby's keeplock determination to defendant Walker, but claims that that appeal went unanswered. Amended Complaint (Dkt. No. 20) ¶ 51. Giving plaintiff the benefit of every inference, it appears from plaintiff's complaint that his request for review was properly submitted and should have been addressed by Walker or one of his subordinates. Compare Amended Complaint (Dkt. No. 20) Exh. J. with *id.* ¶¶ 36–51 (referring plaintiff's appeal of defendant Quinn's determination to defendant Burge). Accordingly, I therefore decline to recommend defendant Walker's dismissal from plaintiff's Eighth Amendment allegations based solely on personal involvement.

### b) *Merits*

While all of the named defendants with the exception of Burns and Gummerson can somehow be linked to plaintiff's Eighth Amendment allegations, those allegations substantively fail to state a potential Eighth Amendment violation and should therefore be dismissed on the merits.

 The Eighth Amendment's prohibition of cruel and unusual punishment encompasses punishments that involve the "unnecessary and wanton infliction of pain" and are incompatible with "the evolving standards of decency that mark the progress of a maturing society." *Estelle v. Gamble,* 429 U.S. 97, 102, 104, 97 S.Ct. 285, 290, 291, 50 L.Ed.2d 251 (1976); *see also Whitley v. Albers,* 475 U.S. 312, 319, 106 S.Ct. 1078, 1084, 89 L.Ed.2d 251 (1986) (citing, *inter alia, Estelle* ). The Eighth Amendment does not mandate comfortable prisons, yet it does not tolerate inhumane ones either; thus the conditions of an inmate's confinement are subject to Eighth Amendment scrutiny. *Farmer v. Brennan,* 511 U.S. 825, 832, 114 S.Ct. 1970, 1976, 128 L.Ed.2d 811 (1994) (citing *Rhodes v. Chapman,* 452 U.S. 337, 349, 101 S.Ct. 2392, 2400, 69 L.Ed.2d 59 (1981)).

 A claim alleging that prison conditions violate the Eighth Amendment must satisfy both an objective and subjective requirement—the conditions must be "sufficiently serious" from an objective point of view, meaning that they involve denial of the minimum civilized measure of life's necessities, and the plaintiff must demonstrate that prison officials acted subjectively with "deliberate indifference". *Farmer,* 511 U.S. at 832, 114 S.Ct. at 1977; *Rhodes,* 452 U.S. at 347, 101 S.Ct. at 2399; *Leach v. Dufrain,* 103 F.Supp.2d 542, 546 (N.D.N.Y.2000) (Kahn, J.) (citing *Wilson v. Seiter,* 501 U.S. 294, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991)); *Waldo v. Goord,* No. 97–CV–1385, 1998 WL 713809, at *2

(N.D.N.Y. Oct. 1, 1998) (Kahn, J. and Homer, M.J.); *see also, generally, Wilson,* 501 U.S. 294, 111 S.Ct. 2321, 115 L.Ed.2d 271. Deliberate indifference exists if an official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer,* 511 U.S. at 837, 114 S.Ct. at 1978; *Leach,* 103 F.Supp.2d at 546 (citing *Farmer*); *Waldo,* 1998 WL 713809, at *2 (same).

### 1. *Abuse and Harassment*

██ Portions of plaintiff's claims against defendant Giannotta stem from conduct described by Gill as abusive or hostile. Defendants also seek dismissal of these claims as failing to rise to a constitutionally significant level. *See* Defendants' Summary Judgment Memorandum (Dkt. No. 49) at 12.

██ 42 U.S.C. § 1983 is not designed to rectify harassment or verbal abuse. *Almutt v. Cleary,* 913 F.Supp. 160, 165–66 (W.D.N.Y.1996) (citations omitted). Thus, mere allegations of verbal abuse do not rise to the level of a constitutional violation, and are not cognizable under 42 U.S.C. § 1983. *See Moncrieffe v. Witbeck,* No. 97–CV–253, 2000 WL 949457, at *3 (N.D.N.Y. June 29, 2000) (Mordue, J.) (allegations that corrections officer laughed at inmate not actionable under section 1983) (citation omitted); *Carpio v. Walker,* No. Civ.A.95CV1502, 1997 WL 642543, at *6 (N.D.N.Y. Oct. 15, 1997) (Pooler, J. & DiBianco, M.J.) ("verbal harassment alone, unaccompanied by any injury, no matter how inappropriate, unprofessional, or reprehensible it might seem, does not rise to the level of an Eighth Amendment violation").

To the extent that plaintiff's complaint, as amended, can be construed as alleging a constitutional violation premised upon abusive or hostile conduct toward him on the part of corrections officers—specifically, defendant Giannotta—I recommend dismissal for failure to allege conduct of a constitutionally significant magnitude.

### 2. *Conditions of Confinement*

Plaintiff's Eighth Amendment confinement conditions claims boil down to the alleged denial of noon meals on one limited occasion, the denial of exercise while on keeplock confinement, and being confined to his cell under keeplock confinement for periods of four, twenty-one and twenty-one days on three separate occasions with no alleged unusual conditions. These allegations, even accepted as true, without more are simply insufficient to establish a claim of cruel and unusual punishment in violation of the Eighth Amendment. *E.g., McNatt v. Unit Manager Parker,* No. 3:99CV1397, 2000 WL 307000, at *4 (D.Conn. Jan. 18, 2000) (no Eighth Amendment violation when inmates endured stained, smelly mattresses; unclean cell; no bedding for six days; no cleaning supplies for six days; no toilet paper for one day; no toiletries or clothing for six days; no shower shoes; dirty showers; cold water that did not function properly; and smaller food portions); *Young v. Scully,* Nos. 91 Civ. 4332, 91 Civ. 4801, 91 Civ. 6768, 91 Civ. 6769, 1993 WL 88144, at *4–*5 (S.D.N.Y. Mar. 22, 1993) (deprivation for a period of several days of exercise, shower, hot water, cell cleaning equipment, wardrobe, toiletries and hygiene items did not rise to level of extreme deprivation). I therefore recommend dismissal of plaintiff's Eighth Amendment claims on the merits.

### C. *Summary Judgment*

Having found that plaintiff's claims, with the exception of those asserting an Eighth

Amendment cruel and unusual punishment violation, are sufficient to withstand defendants' motion for dismissal, it is now necessary to address the pending cross-motions for summary judgment.

Summary judgment is warranted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits ... show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986); *Lucente v. IBM Corp.,* 310 F.3d 243, 253 (2d Cir.2002). The moving party has the initial burden of demonstrating that there is no genuine issue of material fact to be decided with respect to any essential element of the nonmoving party's claim. *Anderson,* 477 U.S. at 250 n. 4, 106 S.Ct. at 2511 n. 4; *Lucente,* 310 F.3d at 253. Once that burden is met, the opposing party must show, through affidavits or otherwise, that there is a material factual issue for trial.[10] Fed.R.Civ.P. 56(e); *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553; *Anderson,* 477 U.S. at 250, 106 S.Ct. at 2511. When deciding a summary judgment motion, the court must resolve any ambiguities and draw all inferences from the facts in a light most favorable to the nonmoving party. *Lucente,* 310 F.3d at 253–54; *Wright,* 132 F.3d at 137–38. "Summary judgment is not appropriate where a review of the record reveals sufficient evidence for a rational trier of fact to find in the [non-movant's] favor." *Treglia v. Town of Manlius,* 313 F.3d 713, 719 (2d Cir.2002) (citing *Maresco v. Evans Chemetics,* 964 F.2d 106, 110 (2d Cir.1992)).

D. *Cross Motions For Summary Judgment*

1. *First Amendment Retaliation Claims*

As was true with regard to their dismissal motion, in support of their request for the entry of summary judgment dismissing plaintiff's retaliation claim defendants also urge a finding that plaintiff's First Amendment rights were not effectively chilled by defendants' allegedly retaliatory actions since he continued to file grievances, undeterred by the retaliatory conduct. Defendants' Summary Judgment Memorandum (Dkt. No. 49) at 4–8; *see also* Goglia Letter dated December 18, 2002 (undocketed).

▬▬▬ It is true, as previously noted, that a showing of First Amendment rights is a prerequisite to a First Amendment retaliation claim. *Curley,* 268 F.3d at 72–

---

**10.** A material fact is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510; *Lucente,* 310 F.3d at 254 (citing *Anderson* ). Given this principle, a non-moving party cannot survive a motion for summary judgment merely by relying on the allegations contained in its pleadings. *Corselli v. Coughlin,* 842 F.2d 23, 25 (2d Cir.1988). Though *pro se* plaintiffs are entitled to special latitude when defending against summary judgment motions, they must establish more than merely "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.* *v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *Vital v. Interfaith Medical Ctr.,* 168 F.3d 615, 620–21 (2d Cir.1999) (noting obligation of court to consider whether *pro se* plaintiff understood nature of summary judgment process); *Flores v. Graphtex,* No. 96–CV–820, 1999 WL 185260, at *1 (N.D.N.Y. Mar. 31, 1999) (Munson, S.J.) (*pro se* party's motions should be liberally construed). Evidence which is not significantly probative is insufficient to withstand a summary judgment motion. *Anderson,* 477 U.S. at 256, 106 S.Ct. at 2514.

73 (citing *Davis v. Vill. Park II Realty Co.,* 578 F.2d 461, 464 (2d Cir.1978) and *Laird v. Tatum,* 408 U.S. 1, 13–14, 92 S.Ct. 2318, 2325–26, 33 L.Ed.2d 154 (1972)). In this instance plaintiff's own amended complaint reflects that despite retaliation allegedly experienced by him in January of 2001, he persisted in his filing of grievances. *See, e.g.,* Amended Complaint (Dkt. No. 20) ¶¶ 8, 12. In their motion, defendants also submit evidence of the filing of multiple grievances by plaintiff since the allegedly retaliatory conduct giving rise to his First Amendment claims occurred. *See* Ullman Aff. (Dkt. No. 50) Exh. C. Plaintiff has not refuted these allegations, nor has he submitted anything of evidentiary value to show that as a result of defendants' actions he was dissuaded or deterred from exercising his otherwise protected rights under the First Amendment. Accordingly, defendants are entitled to judgment as a matter of law dismissing plaintiff's First Amendment retaliation claims.[11],[12]

## 2. *Religious Services Denial Claims*

The last aspect of defendants' motion seeks summary judgment dismissing plaintiff's claims stemming from the denial by Corrections Captain Gummerson of requests made by plaintiff to Deputy Superintendent Burns for permission to attend Jehovah Witness services on some thirteen separate occasions. Defendants' Summary Judgment Memorandum (Dkt. No. 49) at 20–24. Defendants maintain that this claim is deficient as a matter of law.

█ As previously indicated, the denial of multiple requests to attend congregate religious services by an inmate under keeplock confinement, whether in a facility SHU or otherwise, can give rise to a First Amendment violation absent a finding that the denial was related to legitimate penological concerns. It may be, on a more fully developed record, that defendants can establish the existence and legitimacy of such concerns. On this record, however, I am unable to say, even after reviewing the affidavits of defendants Burns and Gummerson, that such concerns had been established with regard to this plaintiff. I therefore recommend denial of defendants' motion for summary judgment dismissing plaintiff's free exercise claims, without prejudice to their renewal following the completion of discovery.[13]

11. In light of this disposition it is unnecessary to address defendants' arguments renewing their personal involvement defense at the summary judgment stage, including notably on behalf of defendant Giannotta, who in his affidavit in support of defendants' motion for summary judgment denies any role in the issuance of the January, 2001 misbehavior report. *See* Giannotta Aff. (Dkt. No. 52) ¶¶ 5–6.

12. To the extent that plaintiff alleges that defendants infringed his rights under New York Correction Law § 138(4), such statutory violation in and of itself does not necessarily state a constitutional violation. *See Baker v. McCollan,* 443 U.S. 137, 146–47, 99 S.Ct. 2689, 2695–96, 61 L.Ed.2d 433 (1979); *Amaker v. Goord,* No. 98 Civ. 3634, 1999 WL 511990, at *14 (S.D.N.Y. July 20, 1999) (citation omitted). New York Correction Law

§ 138(4) provides that inmates should not be disciplined for making "written or oral statements, demands, or requests involving a change of institutional conditions, policies, rules, regulations, or laws affecting an institution." New York Correction Law § 138(4). To the extent that plaintiff also asserts pendent state claims under Correction Law § 138 based on defendants' alleged retaliatory conduct, due to my recommended disposition on plaintiff's retaliation claims I also recommend that the court decline to exercise pendent jurisdiction over those state claims.

13. To the extent that plaintiff asserts claims under New York Correction Law § 610, those claims as against defendants Burns and Gummerson survive as well. I make no recommendation, however, as to whether the court should exercise supplemental jurisdiction

### E. *Plaintiff's Motion For Summary Judgment*

Plaintiff has moved seeking the entry of summary judgment in his favor on the claims set forth in his complaint. Defendants have responded by pointing out that they have not yet had an opportunity to engage in pretrial discovery including, notably, to take the plaintiff's deposition. In light of this, they argue, summary judgment is inappropriate, citing Rule 56(f) of the Federal Rules of Civil Procedure.

██ Rule 56(f) provides that

[s]hould it appear from the affidavits of a party opposing the motion [for summary judgment] that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such order as is just.

Fed.R.Civ.P. 56(f). As can be seen from the very text of the rule itself, Rule 56(f) provides a narrow exception to the availability of summary judgment in instances where a party simply cannot fairly respond to a summary judgment motion because of the inability, through no fault of the opposing party, to acquire evidence which is available and would preclude the entry of summary judgment. *See Burlington Coat Factory Warehouse Corp. v. Esprit De Corp.*, 769 F.2d 919, 925–27 (2d Cir.1985); *Crystalline H₂O, Inc. v. Orminski*, 105 F.Supp.2d 3, 6–9 (N.D.N.Y.2000) (McAvoy, J.). In order to successfully assert a Rule 56(f) defense to a summary judgment motion a litigant must provide specific indication of the evidence sought, its relevance to the issues underlying the motion, the efforts that were made to attain that evidence, and why those efforts have been unsuccessful. *Hudson River Sloop Clearwater, Inc. v. Department of Navy*, 891 F.2d 414, 422 (2d Cir.1989) (citing *Burlington*, 769 F.2d at 926–27); *Young v. Corbin*, 889 F.Supp. 582, 584–85 (N.D.N.Y.1995) (McAvoy, C.J.).

██ Defendants have submitted the affidavit of Lisa Ullman, Esq. detailing their position on this issue. Dkt. No. 50. I agree that the defendants should have the benefit of pretrial discovery before plaintiff's motion for summary judgment on his religious free exercise claims is determined. Once discovery has been completed the court will then be in a position—hopefully on a more fully developed record supplied by the parties—to assess the circumstances surrounding the requests by plaintiff for permission to attend the services, and whether they were timely and in all other regards compliant with DOCS policies, as well as whether they were denied and, if so, whether the denial was related to legitimate penological concerns. I therefore recommend denial of plaintiff's motion for summary judgment as premature, without prejudice to his right to renew that application.

## IV. *SUMMARY AND CONCLUSION*

As the foregoing reflects, I find that plaintiff's Eighth Amendment claims are subject to dismissal as a matter of law for failure to state a cause of action upon which relief may be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure. I also find, however, that plaintiff's complaint, when liberally construed, does suffice under Rule 12(b)(6) to adequately plead claims for retaliation and deprivation of his First Amendment right to freely exercise his religion.

with regard to those claims pursuant to 28 U.S.C. § 1367.

In next considering the pending cross-motions for summary judgment, however, I find that only one of the defendants remaining subsequent to the disposition of defendants' motion to dismiss—defendant Gionnatta—is entitled to dismissal as a matter of law based upon his lack of personal involvement. I also find that plaintiff's retaliation claim is deficient as a matter of law based upon his failure to establish any showing that his First Amendment rights were chilled as a result of defendants' allegedly retaliatory conduct. I further recommend denial of the parties' cross-motions addressing plaintiff's First Amendment free exercise claims based upon the existence of genuine issues of material fact and the fact that the defendants have not yet had a meaningful opportunity to engage in pretrial discovery with regard to this claim. Finally, I recommend rejection of defendants' qualified immunity defense, without prejudice to their right to reassert it at a later juncture.

As a consequence, I recommend dismissal of all claims asserted in plaintiff's amended complaint with the exception of plaintiff's First Amendment free exercise claims and any related state law claims under New York Correction Law § 610 as against defendants Gummerson and Burns.

Based upon the foregoing, it is hereby

RECOMMENDED, that defendants' motion to dismiss plaintiff's amended complaint for failure to state a cause of action under Federal Rule 12(b)(6) (Dkt. No. 37–1) be GRANTED in part and otherwise DENIED; and it is further

RECOMMENDED, that plaintiff's cross-motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure in his favor establishing liability on the claims set forth in his complaint (Dkt. No. 41–1), be DENIED, without prejudice,

pursuant to Rule 56(f) of the Federal Rules of Civil Procedure; and it is further

RECOMMENDED, that defendants' cross-motion for summary judgment dismissing plaintiff's claims as a matter of law (Dkt. No. 47–1) be GRANTED in part, and otherwise DENIED based on a finding of genuine issues of material fact; and it is further

RECOMMENDED, that in light of this disposition plaintiff's First Amendment free religious exercise claims and any asserted related state law claims under New York Correction Law § 610 as against defendants Gummerson and Burns remain in the action, and that his complaint be DISMISSED in all other respects, including as against defendants Hoadley, Giannotta, Pelc, Ashby, Vanderwerff, Franczek, Gibson, Quinn, Burge, and Walker; and it is further

ORDERED, that the letter from Douglas J. Goglia, Esq., dated December 18, 2002, be docketed by the Clerk of the Court.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed. R.Civ.P. 6(a), 6(e), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir.1993).

It is further ORDERED that the Clerk of the Court serve a copy of this report and recommendation upon the parties by regular mail.